The Judges delivered their opinions.
Judge Green.
The special verdict in this case express - ly finds the due execution and attestation of the will originally, and the re-publication of it by the testator, after his acquisition of the lands in question. That re-publication was in such a form, as that, if the original execution of the will had not been duly proved, that which was in fact a re-publication would have been received as sutScient to establish the will as then, for the first time, executed. It was, in effect, a re-execution of the will. The declaration of the testator to the witnesses, before he acknowledged the will for his, and requested them to attest, cannot, consistently with the principles of law, be received to impair the legal effect of his acknowledgment of the will. *193 That effect was to make tho will speak as at that time. Tho words of the will are appropriate to pass the lands in question to the female defendant, unless, in point of law, it be necessary that a will of lands should he proved and recorded, before it can have the effect of passing a legal title. The special verdict finds, that the will was duly proved and recorded, but does not disclose whether the original or subsequent execution of the will, was proved in Court, although both were proved before the jury. If it be necessary to the validity of a will of lands, that it should he proved and recorded, then it is necessary, when a republication is relied upon as having the effect of passing after-purchased lands, that such re-publication should also have been proved in tho proper Court, and that proof also recorded; and nothing in the record under consideration, ascertains that the re-publication of the will was proved in the Court of Probate.
Before the statute of wills in England authorised devises of land, and ever since, the Ecclesiastical Courts had jurisdiction to receive and compel the proof of wills, or more properly, of testaments of personal chattels. Originally, a will of lands might be proved by the same evidence, as a testament of personals. This proof, as to a will of personals, was left to tho discretion of the Ecclesiastical Court, and was very loose. The statute of 29 Car. 2, required, that wills of land should be attested by three witnesses, subscribing their names in the presence of the testator, and signed by the testator, or by some other in his presence and at his request. The statute of wills did not give to the Ecclesiastical Courts any jurisdiction of wills of land. Accordingly, although a will of .land and personal property was proved in the Ecclesiastical Court, that probate was no evidence, of the will, so far as the lands were concerned; hut the original will must ho produced, and the execution thereof proved in a Court of Law, even before the statute of Charles 2nd; much less could it be received as evidence of a devise of lands after that statute, as the proof admitted *194 in the Court of Probate might have been inferior to that required by the statute. 12 Vin. Abr. tit. Evidence, 126, pl. 2; Ibid. pl. 4. But, in case of the loss of will and a long possession under it, the registry book was secondary and inferior evidence of the will, admissible, as in all other cases, as the best evidence which the nature of the case admitted of. Ibid. pl. 8, 10. The probate in the Ecclesiastical Court, whilst no evidence of a will of lands, was conclusive evidence of a will of personal estate. Ibid. pi. 2, note. As the probate of a will of lands and personals, in the Ecclesiastical Court, had no effect in establishing the will as to the lands, so it was not necessary, in order to its full effect, that a will of lands should be proved or recorded any where, but was, in all cases, to be produced and proved in the cause in which it came in question. In latter times, beginning in the time of Queen Anne, several acts of Parliament have passed, authorising memorials of wills to be registered, at the election of any party concerned. But, these acts are not general laws. The registry was not made upon proof of the will in any Court by witnesses, but was only a memorandum of the contents of the will, furnished to the register, under the hand of some one of the devisees, and by him registered of course, and was in no case evidence of the authenticity of the will. It was only intended to serve as a notice to the world of the claims made under the will, and the only effect of a failure to register such a memorial, was, that the will was declared to be fraudulent and void as to a purchaser for valuable consideration, without notice. Although a probate of a will of lands was wholly futile, a probate of a will of personals was indispensably necessary to enable the executor to prosecute any suit in that chaj’acter. Yet, without probate, even a will of pei-sonals was effectual to all other purposes; so that an executor might do all other acts in relation to his testator’s estate, such as selling, releasing, &c., and they would be valid. The Court of Probate had, however, a jurisdiction to compel the production and proof of the will.
*195 Upon the settlement of Virginia, the' only judicial trifeunal in this country was the General Court, composed of the Governor and Council. This Court, of necessity, exercised jurisdiction in all matters necessary for the welfare of the Colony; and amongst other jurisdictions, that of the Ecclesiastical Courts in England, in relation to probates of wills and granting letters testamentary and certificates of administration. In process of time, the County Courts were established under the appellation of County Commissioners, with a very limited jurisdiction in small matters, for the relief of the General Court and the people. That jurisdiction was gradually enlarged by various statutes; and the first statute which we find, in relation to the probate of wills, passed in 1645, ch. 7. That act recited, that “whereas the estates of deceased persons in this Colony have been much wronged by the great charge and expense which have been brought in by the administrators thereof, by pretense of their attendance at James City, and the great distance of their habitations from thence;” and enacted, “ that all administrations shall be taken, and the probate of wills made and the wills recorded at the County Courts, where the deceased persons did inhabit.” Neither the preamble nor body of this act applied in any degree, to any question in relation to the proof or the recording of wills of lands; for, the recording of the will was necessary to the probate of wills of personal estate.
The next act upon this subject, was that of 1711, ch. 2. The statute of 29 Charles 2nd, had in the mean time been passed in England, in 1676. This statute did not, in terms, apply to the Colonies, and no statute of Virginia adopted it. Whether it was adopted by usage in Virginia, we have not now the means of knowing, though it probably was not, since in 1748 an act passed prescribing the mode of making and attesting a will of lands, differing materially from the English statute, especially in making a will valid without witnesses, if wholly written by the testator. Since then, the same evidence which was sufficient to ;ui *196 thenticate a will of personals, was also sufficient to authenticate a will of lands from the first settlement of the country until 1748, and the jurisdictions of the Ecclesiastical and Common Law Courts were confounded in that of the General Court; and as the probate of a will of personals was, at common law, conclusive evidence of the authenticity of the will; the practice would naturally have arisen, óf giving in evidence the probate of the will, as well for the purpose of establishing it as a will of lands, as of personalty. But, even if such probate was considered as sufficient proof of a will of lands, and binding on the heir, it did not follow that it was necessary to prove it, in order to give it effect as a will of lands, no more than it was necessary to make a probate .of a will of personalty, to give it effect as a will at common law, although the probate, when made, was conclusive proof of the will.
The existence of such a practice was recognized and sanctioned by the act of 1711, which provided, that the County Courts should have jurisdiction to hear and determine all matters testamentary; to examine and take the proof of wills, and grant certificates of such proof to the Governor, in order to obtain probates, and to hear and determine the right of administration, according to the following rules: that the will should be proved in the county where the testator resided, without regard to the fact, whether he had any lands in the county in which he resided, or not; and, if he had no such residence, then in the county wherein any devised land lay; or, if lands in several counties were devised, and he died in any such county, it was to be proved in the county where he died; or, if he should die in any other county than where any of his lands lie, the will should be proved in one of the counties in which such land lay. “ And, the proof of any will, once well and sufficiently made, in any county, as is above directed, shall and is hereby declared to be, of the same force, effect, and validity, for the disposing of lands or any other estate, as if the same had been proved in every *197 particular comity, whore any land or other estatcsha.il be.” It farther provided, that, before any will wherein lands were devised, should be proved, the heir should be summoned to contest it; and, if there were no heir known, that proclamation should be made; and that persons laboring under the disabilities of infancy, &c. should be at liberty to contest the proof within ten years after the disability removed, “ and not after.” It also provided, that the probate of a will, granted on the certificate of a County Court, as aforesaid, should enable the executor to recover the estate, real (I presume, when devised to him,) and personal, every where, “ in like manner as they might or could do, within the several counties, where such certificate for obtaining probates shall be granted respectively.” It was further provided, that nothing in that act contained, should disable any Court from compelling any person, having possession of the will, to produce it, “for the just and legal proceedings to be had thereon;” and directed that all original wills (for the better preservation thereof,) should remain in the Clerk’s office, among the records, whereto, any person, whose occasions shall so require, shall have recourse.
Upon this act, I observe that, under the act of 1645, .questions had arisen, whether a County Court had jurisdiction in any case where the testator did not reside in any county, and the act was made for the purpose of extending the jurisdiction of the County Courts, to such cases; but, as difficulties would have arisen, in determining to what county, in such case, the jurisdiction should belong, the act prescribed the criterion, upon which that jurisdiction should depend, by referring to the location of the testator’s lands, as the only certain criterion, and not because of the effect of the probate on the will, as a will of lands; or, rather, not because a probate was necessary to a will of lands; for, if the testator had a residence in a county where he had no laud, the will was to be there proved, although he might have lands in other counties.
*198 Secondly. Under the act of 1645, it had at least been doubted, whether the probate in a County Court had, on account of the limited jurisdiction of the Court, any effect out the county, as to lands or goods; for, the act provides, that it shall have the same effect as to both every where, that it would have in the county where the proof was made. But, what effect that should be, in relation to lands, is not stated in the act. That effect appears, from other clauses of the statute, to have been, that the probate of a will was, in relation to land, as well as personals, conclusive proof of its authenticity; and this rule could only have arisen out of the long practice of the country to that effect. For, the statute provides, that the heir shall be summoned, &c., and that those laboring under disabilities, may contest the proof within ten years after the disability removed, “ and not after;” provisions, which would have been superfluous, if the proof of the will had not been conclusive, but for those provisions. But, it does not follow, from the fact that such proof would have been conclusive, that it was necessary, either to the validity of a will of personal or real estate, or that no other proof was admissible as to a will of lands. Nor does the recognition of an authority to compel the production of the will, or the direction that the original will shall remain amongst the records, lead to the inference that a probate was necessary to the validity of a will of lands.
An act passed in 1744, authorising a will to be proved as soon as exhibited, and providing that it should not affect the heir at law, but, he was to be summoned as before, after-the probate of the will, and might contest the validity of the will, as if that act had not been made. In 1748, an act passed, repeating the provisions of the act of 1711, with this difference, that the will might be immediately proved, when exhibited, but such proof shall not be binding on the heir; but, that he should be summoned to contest the validity of the will, at the next Court, and if there were no known heir, then that proclamation should be *199 made. The act neither prescribes what shall be the effect of such proclamation, nor of the probate, when there was a known heir; but, he cannot be actually summoned to contest the will. It has the same provision in relation to persons laboring under disabilities, as the act of 1711 has. This act was in effect the same, as the act of 1711, and is liable to the same remarks.
The act of 1785, ch. 61, substantially re-enacts the provisions of the acts of 1711 and 1748, with this difference, that, if a will be proved upon its presentation for proof, any persons interested might, within seven years thereafter, contest the validity thereof, by bill in Chancery; upon which, an issue shall be made up, and, tried by a jury, il whether the writing produced he the will of the testator, or not A But, no such party appearing within that time, the probate shall be forever binding. Both the act of 1748, and that of 1785, had a provision that nothing in them contained should impair the right of the executor to possess his testator’s estate, and execute his trust before probate, in the same manner as if the acts had never been made. I should have thought, that without such a provision, that right would not have been affected. The various acts on this subject being made only to provide a tribunal for granting probates in this country, as a substitute for the Ecclesiastical Courts in England, a probate was not necessary here, but for the purposes for which it was necessary there, to wit: to enable the executor to sue; and that, to all other purposes, the will was valid without probate, as in England; and so the acts making the probate of ihe will conclusive as to lands also, but without requiring such probate as a pre-requisite to the validity of the will, as to lands, left the will, if not proved in the Court of Probate, to have the same effect as if the acts had not been made; that is, that the effect given to the probate of the will was for the benefit of those claiming under the will only. If the effect of the acts was, to declare the will invalid, if not proved in a Court, of Probate, then those acts, *200 in many cases, would have been prejudicial to those claims ing under the will. For, until 1787, no provision was made for the means of authenticating copies of wills made in a foreign country, for probate here, nor for procuring the evidence of witnesses residing abroad; and, until that time, such will could not have been admitted to probate, without the production of the original will and the witnesses; for, no commission could issue for examining the witnesses for proving the will in the Court of Probate. From our connexion with England, the title to lands in Virginia must, in innumerable instances, have depended upon wills of persons residing in England, and made there, the originals of which could not be produced here for probate, or upon the trial of a cause. Such wills, therefore, must have been admitted in evidence, upon the trial of issues, upon general principles of evidence at the common law, or such inferior evidence as to their authenticity, as was the best which the nature of the case admitted.
The provisions of these acts have, in substance, been continued in our code to the present day, with some additional provisions which have no influence on the question under consideration. It is not, therefore, necessary that a will should be proved in a Court of Probate, in order to give it validity as a will of lands. The only effect of such probate is, to afford one mode of proof that the will is genu- ■ ine and authentic; but the mode of proof allowable before the passing of those statutes, is not abolished or prohibited by them; that is, by evidence upon the trial. If a will offered for probate was contested and rejected, this might be used thereafter, as the decision of a competent judicial tribunal, and would condemn it forever. In the case at bar, it was superfluous for the jury to find the probate. That might be used as an evidence to them, that the will was duly made and executed, and they might have found that fact, without stating upon what evidence it was found, as they might have found the fact upon the evidence of the witnesses without setting forth that evidence. Sup *201 posing the probate not to state any thing as to the re-publication of the will, as it most probably does not, then it may be said that it is proof of a will made at its date in 1810, and to speak, as to land, as of that date; and that the probate is, until set aside in the manner prescribed by the statute, binding on all the world, and cannot be contradicted by any evidence in any other proceeding. I answer, that if the party interested cannot, in another proceeding, prove the re-publication, her right is lost forever, although she were no party to the probate. For, she affirms, and does not contest the validity of the will; and, therefore, she is not a parly who could exhibit a bill under the statute. If she could, the only question which could be submitted to a jury, according to the act, would be, whether the writing be the will of the testator or not; as to which, both parties affirm that it is, and the verdict must he .in the affirmative. The only contest is as to the effect of the will, admitting its validity; that is, what property it passes. That depends upon the time of its publication, and not on its date; and that may be proved, as any other extraneous circumstance, which affects the operation of the will, may he proved. As, if the testator has two nephews of the same name, parol evidence may be admitted to shew which he meant. The only difference is, that a will of land can only be re-published in the presence of two witnesses, subscribing their names in the testator’s presence. To give it the effect of a-re-publication, it must be proved as an effectual re-publication. This proof does not impair or contradict the probate. That only affirms that the will is proved to have been duly executed, without au enquiry as to the time of publishing it. If, indeed, the question as to the time of publishing had been contested before the Court of Probate, and then decided, as it might have been, such a decision might have been relied on as res judicata; but, if this be not shewn, it cannot be presumed.
*202 Upon the whole, I think the judgment should be affirmed»
Judge Coalter.
The first question in this case is, whether the probate of the will ought to have been found by the jury and spread on the record.
The ^foundation of this objection to the verdict is, that no title can be asserted, as it is contended, by a devisee of lands, unless the will is first duly proved in the Court of Probate to have been made and published according to the statute, and that consequently the probate must be exhibited, that the Court may judge of its legality.
Admitting for a moment, that probate is necessary to entitle the devisee to the lands, and that he cannot produce proof of the execution of the will, on the trial, I think it is not, under every' circumstance, necessary to set out the probate at large in the verdict, any more than to set out the record of the probate of a deed admitted to record. It is the usual practice* I believe, where no dispute arises on such point, for a jury to find, that A., being entitled to lands in fee, and lawfully seised thereof, made his will in due form of law, and which was duly admitted to record, &c., whereby he devised the same to B., who entered . thereon, and being lawfully seised, by deed duly proved and recorded, &c., conveyed the same to C.
But, when seisin was necessary to enable a party to devise land, and the case turned upon that point, or the question was, whether the grantor had such possession as was necessary to authorise a conveyance, or whether the deed was duly proved and recorded, so as to bind a subsequent purchaser, then every thing is found so as to enable the Court to pronounce the law upon such point. The questions of seisin, possession, &c., are compounded of fact and law; yet, when no dispute arises concerning them, the jury find them, and I have never heard of an objec *203 don to a special verdict on that score. This appears to me to be a ease much like that. The appellants are all devisees of the realty under this will, and two of them the executors. The verdict finds, that it was duly made and published as a will of lands in 1810; that the testator died in IS 1-6, leaving the said will in full force, which, on the 27th of May, 183 6, was duly proved and admitted to record before the Court of Accomack county, in the Superi- or Court of which county this ejectment was tried.
There seems to have been no dispute then, as to the validity of this will as a will of lands, or as to the probate thereof.
But, the lands in dispute were purchased by the testator in 1815, and the point in dispute was, whether there was a re-publication of this will after this purchase, which passed these lauds to the female appellee, to whom the testator devised “all the residue of his estate of what kind or description soever;” that is to say, whether, what the witnesses proved in relation to that matter, amounted to a re-publication of the will or not ? Another question was also made; whether, if the declarations made by the testator at that time could he considered a re-publication, it was not necessary that such re-publication should have been proved before the Court of Probate and spread on the record, so as to entitle the devisee to the land ? And that, consequently, the will, as to this after-acquired land, is to he considered as never having been proved, and, therefore, giving no title to the devisee.
Admitting, however, for the present, that this will has been duly proved as a will of lands, as of 1810, and that the rc-publication in 1816 is not spread on the record of the probate, I incline to think that the question is not precisely the same as it would have been, had it never been so proved and put on the record.
It is the duly of the executor or administrator with the will annexed, to produce the will and make oath that it is the true last will and testament, as far as he knows or be *204 Heves, and have it proved at least by one witness, so as to obtain letters testamentary. Suppose the executor is heir at law, and intends to contest the will, as one of lands, because the second witness did not subscribe in presence of the testator, or for other causes, and only proves it by one witness. Let us even suppose, that this will has only been so proved in this case, admitted to record merely as a will of personals, and the Court adjourned; by what process, or in what manner is the will again to be brought before the Court of Probate ? The devisee cannot bring his bill. in equity, under the statute, for he does not contest the validity of the will. Even the heir at law cannot sue under that statute, for the will has never been proved as a will of lands. But, if this is a will of lands, as found by the jury, and has been proved as such, as I think is the fair interpretation of the verdict, then all these parties are devisees under it, none contest its validity, and there is no remedy under the statute.- Whether the will passes the lands in dispute or not, is then the only question. The devisee takes possession; the heirs at law sue, and prove that the lairds were purchased after the date of the will. Suppose a testator has his will drawn on a given day, but it is not then executed; and afterwards purchases lands, and then executes his will devising the residue, as in this case; would it not be competent for the devisee to prove, that at the time of this purchase, the will was a blank paper, and never executed until after the purchase ? I believe no probate of a will can be produced, which specifies the date of the attestation. The devisee has no day in the Court of Probate as to this point. He may reside out of the State. The heir formerly was summoned, but not the devisee. That was found inconvenient, and he had seven years, under subsequent laws, to contest the will.
A re-publication makes the will speak as at another time from its original execution, and as if it was made at this latter time; and I can see no difference between that and the case above supposed. Why cannot tlie devisee in *205 that case also, rebut the proof of the heir, by proving that the will was re-published, and, therefore, speaks at that date ? I believe no record of a probate can be produced, in which the re-publication is stated. If such a case does exist, it must be because the devisee, by some accident, knew of the circumstance, was in Court, and had his witnesses ready to prove it. If he was not, I think he ought not to be precluded from such proof on the trial. At last it comes to a trial by jury, and that is the trial prescribed by the act of Assembly in case the will is contested.
But, suppose the re-publication is a conclusion from facts, and does not depend on the parol declarations of the testator. Powell on Devises, p. 667, states such a case, which, though no authority is cited, may nevertheless be law. As where a. testator makes two wills, the latter of which is repugnant to the former, and, of course, a revocation of it; yet, in that case, he says, if the testator destroy the last, and leave the first perfect and unobliterated, those acts, taken together, amount to a re-publication. Or, suppose a testator, by a declaration in Writing, according to our statute, revokes his will, and afterwards calls the same witnesses, and destroys that paper in their presence; would not* this also amount to a re-publication, without again expressly re-publishing his will, left entire, as aforesaid, before them, or any other set of witnesses ?
If these acts would be a re-publicatinn, of which no witness to the will is cognizant, ought they, or could it be expected that they shoúld appear in the record of the probate ?
As to the general question, whether a will of lands is so far void that a devisee cannot make title under it, unless it is first proved in a Court of Probate, if that question is involved in this case, it appears to me at present, as well for the reasons above stated, as to proof of the re-publication of such will, as from a view of the various acts of Assembly, that the proposition contended for cannot be sustained.
*206 Until the act of 1787, there was no provision for the probate of a foreign will of this description; and it cannot be contended, I presume, that, previous to that time, no» thing passed by such will, and that the devisee could not recover under it.
The real question intended to be submitted by this special verdict is, whether the facts, found in this case, amount to a re-publication of this will, or not ? If they do, then the after-acquired lands passed to the devisee, and the judgment must be affirmed. I think, the declaration of the testator, that “ this is my will;’3 his request, that the witnesses should attest it; and their doing so, in his presence, was a re-publication of that paper, as his will; and that solemn act cannot he affected by the loose previous declarations made by him to the witnesses.
The judgment must, therefore, be affirmed.
• Judges Cabeix, and Bb.ooxe, concurred; and the judgment was accordingly affirmed. -